IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:20-cv-00240

PENNSYLVANIA NATIONAL
MUTUAL CASUALTY INSURANCE
COMPANY,

        Plaintiff,

        v.

GRASSROOTS ASSOCIATES, INC.
d/b/a KIA OF GASTONIA,

        Defendant.

**DECLARATORY JUDGMENT
COMPLAINT**

COMES NOW Plaintiff Pennsylvania National Mutual Casualty Insurance Company

("Penn National"), by and through counsel, and pursuant to Rule 57 of the Federal Rules of Civil

Procedure, alleges and says:

## **Preliminary Statement**

1.    Pursuant to 28 U.S.C. §2201, Penn National seeks a declaratory judgment and

adjudication concerning the rights, obligations and liabilities of the parties with respect to whether

coverage is afforded under certain policies of insurance issued by Penn National to Defendant

Grassroots Associates, Inc. d/b/a Kia of Gastonia ("Kia of Gastonia") with regard to lawsuits that

have been filed against Kia of Gastonia.

## **Jurisdiction**

2.    Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C.

§1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the

amount of controversy exceeds the sum of $75,000.

## Venue

3.      This action properly lies in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. §1391(b)(1) because the Defendant resides in this judicial district, and 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this declaratory judgment action occurred in this judicial district.

## Parties

4.      Penn National is, and at all times mentioned herein was, an insurance company duly organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business also located in Pennsylvania.

5.      Upon information and belief, Defendant Kia of Gastonia is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of North Carolina, with its principal place of business located in Gastonia, Gaston County, North Carolina.

## Facts

6.      At all times relevant herein, Kia of Gastonia was engaged in the business of selling new and used cars to the public from its place of business located at 4290 Wilkinson Blvd., Lowell, North Carolina.

7.      On or about September 30, 2019, Joyce Price Parks filed a lawsuit against Kia of Gastonia in the Superior Court of Gaston County, entitled, "*Joyce Price Parks, plaintiff, v. Grassroots Associates, Inc. d/b/a Kia of Gastonia, Integrity Automotive Promotions, LLC, Hyundai Capital America, Inc., and PNC Bank, National Association, defendants*," Civil Action No. 19-CvS-4020 ("Parks Lawsuit"). A true and correct copy of the Parks Lawsuit is attached hereto as Exhibit A.

2

8.      In the Parks Lawsuit, it is alleged that Kia of Gastonia made false representations and concealed material facts when the plaintiff purchased both a Kia Soul on or about July 2017, and a used Nissan Rogue on or about December 14, 2017.  The Parks Lawsuit also alleges that Kia of Gastonia falsified the plaintiff's credit application when the plaintiff agreed to purchase the vehicles, and wrongfully included certain packages for the vehicles in the price that plaintiff had not agree to purchase.

9.      On or about September 30, 2019, Penny G. Welch filed a lawsuit against Kia of Gastonia in the Superior Court of Gaston County, entitled, "*Penny G. Welch, plaintiff, v. Grassroots Associates, Inc. d/b/a Kia of Gastonia, Integrity Automotive Promotions, LLC, and PNC Bank, National Association, defendants*," Civil Action No. 19-CvS-4015 ("Welch Lawsuit").  A true and correct copy of the Welch Lawsuit is attached hereto as Exhibit B.

10.     In the Welch Lawsuit, it is alleged that Kia of Gastonia made false representations and concealed material facts when the plaintiff purchased a used Nissan Frontier on or about July 15, 2017.  The Welch Lawsuit also alleges that Kia of Gastonia falsified the plaintiff's credit application when the plaintiff agreed to purchase the vehicle and wrongfully included certain packages for the vehicle in the price that plaintiff had not agree to purchase.

11.     On or about October 31, 2019, Peggy Darlene Ensley and Donnie Candler Ensley filed a lawsuit against Kia of Gastonia in the Superior Court of Gaston County, entitled, "*Peggy Darlene Ensley and Donnie Candler Ensley, plaintiffs, v. Grassroots Associates, Inc. d/b/a Kia of Gastonia, Integrity Automotive Promotions, LLC, and Citizens Bank, National Association, defendants*," Civil Action No. 19-CvS-4503 ("Ensley Lawsuit").  A true and correct copy of the Ensley Lawsuit is attached hereto as Exhibit C.

3

12.     In the Ensley Lawsuit, it is alleged that Kia of Gastonia made false representations and concealed material facts when the plaintiffs purchased a used Nissan Rogue on or about September 20, 2017.  The Ensley Lawsuit also alleges that Kia of Gastonia falsified the plaintiffs' credit application when the plaintiffs agreed to purchase the vehicle and wrongfully included certain packages for the vehicle in the price that plaintiffs had not agree to purchase.  The Ensley Lawsuit further alleges that Kia of Gastonia failed to disclose to the plaintiffs that the vehicle that they purchased had been involved in a prior accident.

13.     On or about November 18, 2019, Donald Gene Bradshaw filed a lawsuit against Kia of Gastonia in the Superior Court of Gaston County, entitled, "*Donald Gene Bradshaw, plaintiff, v. Grassroots Associates, Inc. d/b/a Kia of Gastonia, Integrity Automotive Promotions, LLC, and Hyundai Capital America, Inc., defendants,*" Civil Action No. 19-CvS-4785 ("Bradshaw Lawsuit").  A true and correct copy of the Bradshaw Lawsuit is attached hereto as Exhibit D.

14.     In the Bradshaw Lawsuit, it is alleged that Kia of Gastonia made false representations and concealed material facts when the plaintiff purchased a Kia Sportage on or about December 15, 2016.

15.     On or about December 13, 2019, Baxter Lee Hansen filed a lawsuit against Kia of Gastonia in the Superior Court of Gaston County, entitled, "*Baxter Lee Hansen, plaintiff, v. Grassroots Associates, Inc. d/b/a Kia of Gastonia, and Integrity Automotive Promotions, LLC, defendants,*" Civil Action No. 19-CvS-5080 ("Hansen Lawsuit").  A true and correct copy of the Hansen Lawsuit is attached hereto as Exhibit E.

16.     In the Hansen Lawsuit, it is alleged that Kia of Gastonia made false representations and concealed material facts when the plaintiff purchased a Kia Soul on or about

4

December 17, 2016, and a Kia Sportage on or about July 11, 2017. The Hansen Lawsuit also alleges that Kia of Gastonia falsified the plaintiff's credit application when the plaintiff agreed to purchase the vehicles and wrongfully included certain packages for the vehicles in the price that plaintiff had not agree to purchase.

17. In the Parks Lawsuit, the Welch Lawsuit, the Ensley Lawsuit, the Bradshaw Lawsuit, and the Hansen Lawsuit (collectively referred to as the "Kia of Gastonia Lawsuits"), there are two claims asserted against Kia of Gastonia: (1) unfair and deceptive trade practices in violation of N.C. Gen. Stat. §75-1.1, *et seq.*; and (2) fraud.

18. In each of the Kia of Gastonia Lawsuits, the plaintiffs alleged that "Kia of Gastonia committed the above acts or practices or omitted such material information, willfully, recklessly, maliciously, and with intent to injure and defraud Plaintiff."

19. In each of the Kia of Gastonia Lawsuit, the plaintiffs seek compensatory damages, punitive damages, treble damages, costs and attorneys' fees, and pre-judgment and post-judgment interest.

20. Penn National issued a Garage Policy to Named Insured, "Kia of Gastonia Grassroots, Grassroots Associates, Inc. DBA," Policy No. GR9 0703991 03, for the policy period of November 28, 2016 through November 28, 2017 ("Garage Policy"). A true and correct copy of the Garage Policy is attached hereto as Exhibit F.

21. Penn National also issued a Commercial Umbrella Liability Policy to Named Insured, "Kia of Gastonia Grassroots, Grassroots Associates, Inc. DBA," Policy No. UL90703991, for the policy period of November 28, 2016 through November 28, 2017 ("Umbrella Policy"). A true and correct copy of the Umbrella Policy is attached hereto as Exhibit G.

5

22.     Kia of Gastonia has made demand on Penn National to provide coverage to it, including both a defense and indemnity for any judgment or settlement, in each of the Kia of Gastonia Lawsuits.

23.     Penn National has agreed to defend Kia of Gastonia in each of the Kia of Gastonia Lawsuits subject to a full reservation of all rights, including the right to withdraw from the defense, the right to deny any duty to indemnify Kia of Gastonia with respect to any judgment rendered or settlement reached as a result of the claims in each of the Kia of Gastonia Lawsuits, and the right to file an action seeking a declaration from the court as to the obligations of the parties under the insurance policies described herein.  Penn National is still providing a defense to Kia of Gastonia, subject to this reservation of rights.

## COUNT I:  DECLARATORY JUDGMENT
### (GARAGE POLICY – GARAGE OPERATIONS LIABILITY COVERAGE)

24.     Penn National incorporates by reference herein paragraphs 1 through 23, as if set forth more fully herein.

25.     The Garage Policy provides "garage operations liability coverage" pursuant to a Symbol "21," as indicated on the Declarations pages of the Garage Policy.  Under the provisions of the Garage Policy, the description of covered auto designated by the symbol "21" is "any 'auto'."

26.     The insuring agreements under the garage operations liability coverage part of the Garage Policy state:

**SECTION II – LIABILITY COVERAGE**

**A.  Coverage**

**1.     "Garage Operations" – Other Than Covered "Autos"**

6

a.    We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".

We have the right and duty to defend any "insured" against a "suit" asking for these damages.  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" – Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "accident" occurs in the coverage territory;

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no "insured" listed under Who Is An Insured and no "employee" authorized by you to give or receive notice of an "accident" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed "insured" or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage", which occurs during the policy period and was not, prior to the policy period known to have occurred by any "insured" listed under Who Is An Insured or any "employee" authorized by you to give or receive notice of an "accident" or claim, includes any continuation, change or resumption

7

of that "bodily injury" or "property damage" after the end of the policy period.

    d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Who Is An Insured or any "employee" authorized by you to give ro receive notice of an "accident" or claim:

        (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2.    "Garage Operations" – Covered "Autos"**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".

                  ***

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense".  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.  We may investigate and settle any claim of "suit" as we consider appropriate.  Our duty to defend or settle ends when the Liability Coverage Limit of Insurance – "Garage Operations" – Covered "autos" has been exhausted by payment of judgments or settlements.

    27.    The Garage Policy defines the terms in quotation marks contained in the insuring agreements as follows:

**SECTION VI – DEFINITIONS**

    C.   "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

8

O. "Property damage" means damage to or loss of use of tangible property.

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

H. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of the coverage form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

28.     The claims alleged and damages sought in the Kia of Gastonia Lawsuits are not "bodily injury" or "property damage" caused by an "accident" and resulting from "garage operations" as is required under the insuring agreements of the Garage Operations Liability Coverage part of the Garage Policy.

29.     The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreements contained in the Garage Operations Liability Coverage part of the Garage Policy. Accordingly, the Garage Policy does not provide coverage for Kia of Gastonia for any of the Kia of Gastonia Lawsuits.

30.     The Garage Operations Liability Coverage part of the Garage Policy contains several exclusions, including the following:

**SECTION II – LIABILITY COVERAGE**

**B. Exclusions**

This insurance does not apply to any of the following:

**1.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". But for "garage operations" other than covered "autos" this exclusion does not

9

apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

31.　Each of the Kia of Gastonia Lawsuits alleges that Kia of Gastonia engaged in intentional acts and/or conduct to allegedly defraud, misrepresent, or conceal material facts from the plaintiffs in each of the Kia of Gastonia Lawsuits.

32.　The claims alleged and damages sought in the Kia of Gastonia Lawsuit are excluded from coverage under the Garage Operations Liability Coverage part of the Garage Policy through operation of the expected or intended injury exclusion.  Accordingly, the Garage Policy does not provide coverage to Kia of Gastonia for the Kia of Gastonia Lawsuits.

33.　The Garage Operations Liability Coverage part of the Garage Policy contains other terms, conditions and exclusions which preclude coverage for the damages sought by the plaintiffs in the Kia of Gastonia Lawsuits.

34.　Penn National requests this Court to declare the relative rights, duties and obligations of the parties to this action under the Garage Operations Liability coverage part of the Garage Policy with regard to the Kia of Gastonia Lawsuits.  Specifically, Penn National requests this Court to declare that Penn National has no obligation to defend or indemnify Kia of Gastonia for any costs that it, or anyone on its behalf, incur in defending the Kia of Gastonia Lawsuits, and that Penn National has no obligation to indemnify Kia of Gastonia for any damages arising out of the allegations contained in the Kia of Gastonia Lawsuits.

35.　A genuine, actual and justiciable controversy between and among the parties to this action has arisen and presently exists concerning coverage afforded by Penn National pursuant to the Garage Policy, and Penn National is entitled to a declaratory judgment as to its obligations and liabilities under the Garage Policy.  Penn National hereby alleges and contends that it is entitled to a judgment declaring and adjudging that it is not obligated to defend nor to pay any sums on behalf

10

of any party for any damages arising out of the allegations in the Kia of Gastonia Lawsuits.  This

action is therefore ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil

Procedure as authorized by 28 U.S.C. §2201.  A final ruling by this Court will determine the rights

and obligations of Plaintiff and Defendant and will settle the controversy among them as to these

insurance coverage issues.

**COUNT II:  DECLARATORY JUDGMENT**
**(GARAGE POLICY – GARAGEKEEPERS COVERAGE)**

36.     Penn National incorporates by reference herein paragraphs 1 through 35, as if set

forth more fully herein.

37.     The insuring agreement under the Garagekeepers Coverage part of the Garage

Policy states:

**SECTION III – GARAGEKEEPERS COVERAGE**

**A. Coverage**

1.     We will pay all sums the "insured" legally must pay as
damages for "loss" to a "customer's auto" or "customer's auto"
equipment left in the "insured's" care while the "insured" is
attending, servicing, repairing, parking or storing it in your
"garage operations" under:

a.     Comprehensive Coverage
From any cause except:
(1)     The "customer's auto's" collision with another
object; or
(2)     The "customer's auto's" overturn.

b.     Specified Causes of Loss Coverage
Caused by:
(1)     Fire, lightning or explosion;
(2)     Theft; or
(3)     Mischief or vandalism.

c.     Collision Coverage
Caused by:

11

<blockquote>

(1)    The "customer's auto's" collision with another object; or

(2)    The "customer's auto's" overturn.

2.    We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any loss to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

</blockquote>

38.    The Garage Policy defines the terms in quotation marks contained in the insuring agreement as follows:

**SECTION VI – DEFINITIONS**

<blockquote>

L.  "Loss" means direct and accidental loss or damage. But for Garagekeepers Coverage only, "loss" also includes any resulting loss of use.

E.  "Customer's auto" means a land motor vehicle, "trailer" or semitrailer lawfully within your possession for service, repair, storage or safekeeping, with or without the vehicle owner's knowledge or consent. A "customer's auto" also includes any such vehicle left in your car by your "employees" and members of their households, who pay for services performed.

</blockquote>

39.    The claims alleged and damages sought in the Kia of Gastonia Lawsuits are not for "loss" to a "customer's auto" while such auto was left in the care of Kia of Gastonia while Kia of Gastonia was servicing, repairing, parking or storing such auto as is required under the insuring agreements of the Garagekeepers Coverage part of the Garage Policy.

40.    The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreement contained in the Garagekeepers Coverage part of the Garage Policy. Accordingly, the Garage Policy does not provide coverage for Kia of Gastonia for any of the Kia of Gastonia Lawsuits.

41.     Penn National requests this Court to declare the relative rights, duties and obligations of the parties to this action under the Garagekeepers coverage part of the Garage Policy with regard to the Kia of Gastonia Lawsuits.  Specifically, Penn National requests this Court to declare that Penn National has no obligation to defend or indemnify Kia of Gastonia for any costs that it, or anyone on its behalf, incur in defending the Kia of Gastonia Lawsuits, and that Penn National has no obligation to indemnify Kia of Gastonia for any damages arising out of the allegations contained in the Kia of Gastonia Lawsuits.

42.     A genuine, actual and justiciable controversy between and among the parties to this action has arisen and presently exists concerning coverage afforded by Penn National pursuant to the Garage Policy, and Penn National is entitled to a declaratory judgment as to its obligations and liabilities under the Garage Policy.  Penn National hereby alleges and contends that it is entitled to a judgment declaring and adjudging that it is not obligated to defend nor to pay any sums on behalf of any party for any damages arising out of the allegations in the Kia of Gastonia Lawsuits.  This action is therefore ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. §2201.  A final ruling by this Court will determine the rights and obligations of Plaintiff and Defendant and will settle the controversy among them as to these insurance coverage issues.

## COUNT III:  DECLARATORY JUDGMENT
### (GARAGE POLICY – EXTENDED GARAGE COVERAGE – AUTO DEALERS)

43.     Penn National incorporates by reference herein paragraphs 1 through 42, as if set forth more fully herein.

44.     The Garage Policy contains an endorsement entitled, "Extended Garage Coverage – Auto Dealers."

45. The Extended Garage Coverage endorsement contains the following insurance coverage:

> **COVERAGE 2. TRUTH IN LENDING ERRORS AND OMISSIONS COVERAGE**
>
> We will pay all sums the "insured" legally must pay as damages because of alleged or actual negligent acts, errors or omissions resulting in civil violation of any federal, state or local Truth-In-Lending statute. We have the right and the duty to defend any "suit" asking for these damages. We may investigate and settle any claim or "suit" as we consider appropriate.

46. None of the Kia of Gastonia Lawsuits has asserted civil violations of any federal, state or local Truth-In-Lending statutes against Kia of Gastonia.

47. The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreement of Coverage 2. Truth In Lending Errors and Omissions Coverage of the Extended Garage Coverage endorsement.

48. Coverage 2. Truth in Lending Errors and Omissions Coverage of the Extended Garage Coverage endorsement contains the following exclusion:

> EXCLUSION: We will not pay and we have no duty to defend any claim or "suit" which is the result of any dishonest, fraudulent, criminal or intentional act or acts committed by the "insured"; any of the partners, officers, "employees", or agents of the "insured"; or any other party in interest acting alone or in collusion with others.

49. The Kia of Gastonia Lawsuits contain allegations that the claims asserted and the damages sought in the Lawsuits are the result of Kia of Gastonia's dishonest, fraudulent, criminal or intentional acts. Accordingly, the exclusion operates to bar all coverage for the Kia of Gastonia Lawsuits under the Coverage 2 of the Extended Garage Coverage endorsement.

50. The Extended Garage Coverage endorsement also contains the following insurance coverage:

14

**COVERAGE 6. PRIOR DAMAGE DISCLOSURE ERRORS AND OMISSIONS COVERAGE**

> We will pay all sums the "insured" legally must pay as damages because of alleged or actual negligent acts, errors or omissions by an "insured" resulting in civil violation of any federal, state or local statute which pertains to disclosure of prior damage. We may investigate and settle any claim or "suit" as we consider appropriate.

51.     None of the Kia of Gastonia Lawsuits has asserted civil violations of any federal, state or local statutes pertaining to disclosure of prior damage against Kia of Gastonia.

52.     The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreement of Coverage 6. Prior Damage Disclosure Errors and Omissions Coverage of the Extended Garage Coverage endorsement.

53.     Coverage 6. Prior Damage Disclosure Errors and Omissions Coverage of the Extended Garage Coverage endorsement contains the following exclusion:

> EXCLUSION:     We will not pay and we have no duty to defend any claim or "suit" which is the result of any dishonest, fraudulent, criminal or intentional act or acts committed by the "insured"; any of the partners, officers, "employees", or agents of the "insured"; or any other party in interest acting alone or in collusion with others.

54.     The Kia of Gastonia Lawsuits contain allegations that the claims asserted and the damages sought in the Lawsuits are the result of Kia of Gastonia's dishonest, fraudulent, criminal or intentional acts. Accordingly, the exclusion operates to bar all coverage for the Kia of Gastonia Lawsuits under Coverage 6 of the Extended Garage Coverage endorsement.

55.     The Extended Garage Coverage endorsement also contains the following insurance coverage:

**COVERAGE 8. USED CAR BUYERS GUIDE ERRORS AND OMISSIONS COVERAGE**

15

a. We will pay all sums the "insured" legally must pay as damages for violations of federal, state or local Buyers Guide statutes or regulations because of a negligent act, error or omission committed by the "insured" during the policy period.

b. We have the right and duty to defend claims or "suits" against the "insured" seeking such damages. However, we have no duty to defend any "insured" against a "suit" seeking damages to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Limit of Insurance has been exhausted by payment of judgments or settlements.

56. None of the Kia of Gastonia Lawsuits has asserted violations of any federal, state or local Buyers Guide statutes or regulations against Kia of Gastonia because of any negligent act, error or omission committed by Kia of Gastonia during the policy period of the Garage Policy.

57. The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreement of Coverage 8. Used Car Buyers Guide Errors and Omissions Coverage of the Extended Garage Coverage endorsement.

58. Coverage 8. Used Car Buyers Guide Errors and Omissions Coverage of the Extended Garage Coverage endorsement also contains the following exclusion:

EXCLUSION: We will not pay and we have no duty to defend any claim or "suit" which is the result of any dishonest, fraudulent, criminal or intentional act or acts committed by the "insured"; any of the partners, officers, "employees", or agents of the "insured"; or any other party in interest acting alone or in collusion with others.

59. The Kia of Gastonia Lawsuits contain allegations that the claims asserted and the damages sought in the Lawsuits are the result of Kia of Gastonia's dishonest, fraudulent, criminal or intentional acts. Accordingly, the exclusion operates to bar all coverage for the Kia of Gastonia Lawsuits under Coverage 8 of the Extended Garage Coverage endorsement.

16

60.     The Extended Garage Coverage endorsement also contains the following

provision:

**One Year Prior Acts Coverage**

The Title and Statutory Errors And Omissions coverages in Paragraphs 1.
through 8. above apply only to damages because of negligent acts, errors
or omissions first committed during the policy period.  These Title And
Statutory Errors and Omissions coverage will also apply to damages
because of negligent acts, errors or omissions first committed one year
prior to the first policy period for which you purchase the Extended
Garage Coverage – Auto Dealers Endorsement from us if all of the
following provisions apply:

a.  You purchased coverage for the applicable title or statutory errors and
    omissions coverage throughout that one year period;
b.  The applicable prior title or statutory errors and omissions coverage
    would also have provided coverage for the damages that are covered
    under this applicable Title And Statutory Errors And Omissions
    coverage;
c.  The applicable prior title or statutory errors and omissions coverage is
    no longer available to cover prior acts, errors or omissions for reasons
    other than the exhaustion of limits of insurance in the payments of
    judgments or settlements; and
d.  No "insured" to which these Title And Statutory Errors And
    Omissions coverage apply, and no "employee" authorized by you to
    give or receive notice of an act, error, omission or claim, knew that the
    act, error or omission had been committed.

Damages because of a negligent act, error or omission committed during
this one year period will be deemed to have been committed during the
first policy period for which you purchased the Extended Garage
Coverage – Auto Dealers Endorsement from us.  Only the first policy
period will apply and no coverage will be provided for such damages in
subsequent policy periods, if any, for which you purchased the Extended
Garage Coverage – Auto Dealers Endorsement.

A $100,000 One Year Prior Acts Limit Of Insurance applies separately to
each Title And Statutory Errors And Omissions coverage in Paragraphs 1.
through 8. above for damages because of negligent acts, errors or
omissions committed during this one year period.  This limit applies to
each claim and as an aggregate to all such claims related to the same title
or statutory errors and omissions coverage.  No other limit of insurance
applies to such prior acts.

17

61.     There is no coverage under the Extended Garage Coverage endorsement for any negligent acts, errors or omissions alleged in the Kia of Gastonia Lawsuits which were first committed after the effective policy period for the Garage Policy.

62.     To the extent that the Kia of Gastonia Lawsuits alleged negligent acts, errors or omissions that were first committed during the one year prior to the policy period of the Garage Policy, any such coverage is either limited or does not exist if any of the provisions contained in the One Year Prior Acts Coverage does not apply.

63.     Penn National requests this Court to declare the relative rights, duties and obligations of the parties to this action under the Extended Garage Coverage endorsement of the Garage Policy with regard to the Kia of Gastonia Lawsuits.  Specifically, Penn National requests this Court to declare that Penn National has no obligation to defend or indemnify Kia of Gastonia for any costs that it, or anyone on its behalf, incurs in defending the Kia of Gastonia Lawsuits, and that Penn National has no obligation to indemnify Kia of Gastonia for any damages arising out of the allegations contained in the Kia of Gastonia Lawsuits.

64.     A genuine, actual and justiciable controversy between and among the parties to this action has arisen and presently exists concerning coverage afforded by Penn National pursuant to the Garage Policy, and Penn National is entitled to a declaratory judgment as to its obligations and liabilities under the Garage Policy.  Penn National hereby alleges and contends that it is entitled to a judgment declaring and adjudging that it is not obligated to defend nor to pay any sums on behalf of any party for any damages arising out of the allegations in the Kia of Gastonia Lawsuits.  This action is therefore ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. §2201.  A final ruling by this Court will determine the rights

18

and obligations of Plaintiff and Defendant and will settle the controversy among them as to these insurance coverage issues.

## COUNT IV:  DECLARATORY JUDGMENT
### (GARAGE POLICY – PERSONAL INJURY LIABILITY COVERAGE – GARAGES)

65.     Penn National incorporates by reference herein paragraphs 1 through 64, as if set forth more fully herein.

66.     The Garage Policy contains an endorsement entitled, "Personal Injury Liability Coverage - Garages."

67.     The insuring agreement under the Personal Injury Liability Coverage endorsement states:

**A. Coverage**

We will pay all sums the "insured" legally must pay as damages because of "personal injury" caused by an offense committed:

a.      In the conduct of your business; and
b.      In the Coverage Territory during the Policy Period.

We will have the right and duty to defend any "insured" against a "suit" asking for these damages.  However, we have no duty to defend any "insured" against a "suit" seeking "personal injury" to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the Personal Injury Limit of Insurance has been exhausted by payment of judgments or settlements.

68.     The Personal Injury Liability Coverage endorsement defines the terms in quotation marks contained in the insuring agreements as follows:

**E. Additional Definition**

As used in this endorsement:

"Personal injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

19

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

69.    The claims asserted and damages sought in the Kia of Gastonia Lawsuits do not constitute "personal injury" as is required by the insuring agreement contained in the Personal Injury Liability Coverage endorsement contained in the Garage Policy.

70.    The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreement contained in Personal Injury Liability Coverage part of the Garage Policy.  Accordingly, the Garage Policy does not provide coverage for Kia of Gastonia for any of the Kia of Gastonia Lawsuits.

71.    Penn National requests this Court to declare the relative rights, duties and obligations of the parties to this action under the Personal Injury Liability Coverage endorsement of the Garage Policy with regard to the Kia of Gastonia Lawsuits.  Specifically, Penn National requests this Court to declare that Penn National has no obligation to defend or indemnify Kia of Gastonia for any costs that it, or anyone on its behalf, incurs in defending the Kia of Gastonia Lawsuits, and that Penn National has no obligation to indemnify Kia of Gastonia for any damages arising out of the allegations contained in the Kia of Gastonia Lawsuits.

72.    A genuine, actual and justiciable controversy between and among the parties to this action has arisen and presently exists concerning coverage afforded by Penn National pursuant to the Garage Policy, and Penn National is entitled to a declaratory judgment as to its obligations and

20

liabilities under the Garage Policy.  Penn National hereby alleges and contends that it is entitled to

a judgment declaring and adjudging that it is not obligated to defend nor to pay any sums on behalf

of any party for any damages arising out of the allegations in the Kia of Gastonia Lawsuits.  This

action is therefore ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil

Procedure as authorized by 28 U.S.C. §2201.  A final ruling by this Court will determine the rights

and obligations of Plaintiff and Defendant and will settle the controversy among them as to these

insurance coverage issues.

<u>COUNT V:  DECLARATORY JUDGMENT</u>
**(UMBRELLA POLICY)**

73.      Penn National incorporates by reference herein paragraphs 1 through 72, as if set

forth more fully herein.

74.      The insuring agreement under Coverage A of the Umbrella Policy states:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE
LIABILITY**

**1.  Insuring Agreement**

   **a.**      We will pay on behalf of the insured the "ultimate net loss" in
excess of the "retained limit" because of "bodily injury" or
"property damage" to which this insurance applies.  We will
have the right and duty to defend the insured against any "suit"
seeking damages for such "bodily injury" or "property
damage" when the "underlying insurance" does not provide
coverage or the limits of "underlying insurance" have been
exhausted.  When we have no duty to defend, we will have the
right to defend, or to participate in the defense of, the insured
against any other "suit" seeking damages to which this
insurance may apply.  However, we will have no duty to
defend the insured against any "suit" seeking damages for
"bodily injury" or "property damage" to which this insurance
does not apply.  At our discretion, we may investigate any
"occurrence" that may involve this insurance and settlement

21

any resultant claim or "suit" for which we have the duty to defend. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b**. This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations – under the Schedule of "underlying insurance".

**c.** This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no "insured" listed under Paragraph 1.a. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

22

**d**. "Bodily injury" or "property damage", which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**e**. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1.a. of Section II – Who Is An Insured or any "employee" authorized by you to give ro receive notice of an "accident" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*\*\*

75. The Umbrella Policy defines the terms in quotation marks contained in the insuring agreements as follows:

**SECTION V – DEFINITIONS**

25. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

22. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "insured's retained limit", whichever applies.

3. "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury."

23

21. "Property damage" means:
   a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

76.   The claims alleged and damages sought in the Kia of Gastonia Lawsuits are not "bodily injury" or "property damage" caused by an "occurrence" as is required under the insuring agreement contained in Coverage A of the Umbrella Policy.

77.   The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreement contained in Coverage A of the Umbrella Policy. Accordingly, the Umbrella Policy does not provide coverage for Kia of Gastonia for any of the Kia of Gastonia Lawsuits.

78.   Coverage A of the Umbrella Policy contains several exclusions, including the following:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2.   Exclusions**

This insurance does not apply to:

**a.   Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

24

79.     Each of the Kia of Gastonia Lawsuits alleges that Kia of Gastonia engaged in intentional acts and/or conduct to allegedly defraud, misrepresent, or conceal material facts from the plaintiffs in each of the Kia of Gastonia Lawsuits.

80.     The claims alleged and damages sought in the Kia of Gastonia Lawsuit are excluded from coverage under Coverage A of the Umbrella Policy through operation of the expected or intended injury exclusion.  Accordingly, the Umbrella Policy does not provide coverage to Kia of Gastonia for the Kia of Gastonia Lawsuits.

81.     The Umbrella Policy also contains the following additional insuring agreement:

**SECTION I – COVERAGES**

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

    **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.  But:

        (1)    The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits Of Insurance; and

        (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

25

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" that is subject to an applicable "retained limit". If any other limit such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "personal and advertising injury" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to "personal or advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

82. The Umbrella Policy contains the following definitions:

**SECTION V – DEFINITIONS**

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

26

83. The claims alleged and damages sought in the Kia of Gastonia Lawsuits are not "personal and advertising injury" caused by an offense as is required under the Insuring Agreement for Coverage B of the Umbrella Policy.

84. The claims alleged and damages sought in the Kia of Gastonia Lawsuits do not fall within the insuring agreement contained in Coverage B of the Umbrella Policy. Accordingly, the Umbrella Policy does not provide coverage for Kia of Gastonia for any of the Kia of Gastonia Lawsuits.

85. The Umbrella Policy contains other terms, conditions and exclusions which preclude coverage for the damages sought by the plaintiffs in the Kia of Gastonia Lawsuits.

86. To the extent that coverage is afforded under the Umbrella Policy to Kia of Gastonia for the Kia of Gastonia Lawsuits (which Penn National denies), any obligation of Penn National for defense or indemnity under the Umbrella Policy does not attach until the policy limits of all other insurance policies have been exhausted and all deductible and self-insured retentions have been paid.

87. Penn National requests this Court to declare the relative rights, duties and obligations of the parties to this action under the Umbrella Policy with regard to the Kia of Gastonia Lawsuits. Specifically, Penn National requests this Court to declare that Penn National has no obligation to defend or indemnify Kia of Gastonia for any costs that it, or anyone on its behalf, incur in defending the Kia of Gastonia Lawsuits, and that Penn National has no obligation to indemnify Kia of Gastonia for any damages arising out of the allegations contained in the Kia of Gastonia Lawsuits.

88. A genuine, actual and justiciable controversy between and among the parties to this action has arisen and presently exists concerning coverage afforded by Penn National pursuant to

the Umbrella Policy, and Penn National is entitled to a declaratory judgment as to its obligations and liabilities under the Garage Policy. Penn National hereby alleges and contends that it is entitled to a judgment declaring and adjudging that it is not obligated to defend nor to pay any sums on behalf of any party for any damages arising out of the allegations in the Kia of Gastonia Lawsuits. This action is therefore ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. §2201. A final ruling by this Court will determine the rights and obligations of Plaintiff and Defendant and will settle the controversy among them as to these insurance coverage issues.

**WHEREFORE**, Plaintiff, Pennsylvania National Mutual Casualty Insurance Company, respectfully prays the Court as follows:

1. That the Court declare and decree that the policies of insurance issued by Pennsylvania National Mutual Casualty Insurance Company to Kia of Gastonia do not afford coverage to Kia of Gastonia for the claims and damages which are the subject of the Parks Lawsuit, Welch Lawsuit, Ensley Lawsuit, Bradshaw Lawsuit, and Hansen Lawsuit, all of which are currently pending in the Superior Court of Gaston County;

2. That the Court declare and decree that Pennsylvania National Mutual Casualty Insurance Company is not required to defend Kia of Gastonia in the Parks Lawsuit, Welch Lawsuit, Ensley Lawsuit, Bradshaw Lawsuit, and Hansen Lawsuit, all of which are currently pending in the Superior Court of Gaston County;

3. That the Court declare and decree that Pennsylvania National Mutual Casualty Insurance Company is not obligated in any way to pay any damages that Kia of Gastonia may become legally obligated to pay as a result of the Parks Lawsuit,

Welch Lawsuit, Ensley Lawsuit, Bradshaw Lawsuit, and Hansen Lawsuit, all of which are currently pending in the Superior Court of Gaston County;

4.     That the costs of this action be taxed against the Defendant;

5.      For a trial by jury on all issues so triable; and

6.     For such other and further relief as the Court may deem just and proper.

This the 22nd day of April, 2020.

**GOLDBERG SEGALLA LLP**

/s/ David L. Brown
David L. Brown
N.C. State Bar Number 18942
Martha P. Brown
N.C. State Bar Number 20063
701 Green Valley Road, Suite 310
Greensboro, North Carolina 27408
Telephone:     (336) 419-4900
Facsimile:     (336) 419-4950
Email:  dbrown@goldbergsegalla.com
            mpbrown@goldbergsegalla.com

*Attorneys for Plaintiff Pennsylvania*
*National Mutual Casualty Insurance Co.*

29