UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-240-MOC-DCK

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, ) ) ) ) Plaintiff, ) ) vs. ) ) ) ) ) GRASSROOTS ASSOCIATES, INC., ) d/b/a/ Kia of Gastonia, ) ) Defendant. ) ) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Pennsylvania National Mutual Casualty Insurance Company. (Doc. No. 14).

## I.  BACKGROUND

Defendant Grassroots Associates, Inc. d/b/a Kia of Gastonia ("Kia of Gastonia" or "Defendant"), which operated a car dealership located in Lowell, North Carolina, has been sued in several lawsuits for engaging in an intentional scheme to defraud the plaintiffs in those lawsuits–mostly elderly, disabled or otherwise unsophisticated buyers–and induce them to purchase vehicles they could not afford. Defendant tendered these lawsuits to Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National" or "Plaintiff") for defense and indemnity. Penn National agreed to defend, and is currently defending, Defendant under a full reservation of its rights to deny coverage for the Underlying Lawsuits. (Entry Number ("EN") 21-8).

1

On April 22, 2020, Penn National filed this declaratory judgment action, seeking a declaration that the insurance policies issued by Penn National to Kia of Gastonia do not afford coverage for the claims and damages asserted in the underlying lawsuits, and therefore, Penn National does not have a duty to defend or to indemnify Kia of Gastonia in those lawsuits. (EN 1). Penn National filed the pending summary judgment motion on July 1, 2021, Defendant filed its response on August 16, 2021, and Penn National filed a Reply on August 26, 2021. This matter is ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the

nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Finally, the interpretation of an insurance policy is a question of law that is appropriately decided by dispositive motion. See Harleysville Mut. Ins. Co. v. Packer, 60 F.3d 1116, 1121 (4th Cir. 1995).

## III. DISCUSSION

A federal court sitting in diversity jurisdiction is bound to apply the substantive law of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). North Carolina applies the rule of lex loci contractus, or the law of the place where the contract was made, to determine which state's law applies to the interpretation of an insurance policy. Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). Here, the Penn National Policies were issued to Kia of Gastonia in North Carolina. Accordingly, North Carolina law applies to the interpretation of the Penn National Policies.

Under North Carolina law, whether an insurer has a duty to defend an insured is controlled by the "comparison test" whereby the allegations in the complaint are read "side-by-side" with the provisions of an insurance policy to determine whether the events as alleged are covered or excluded. The Supreme Court of North Carolina defined how an insurer's defense obligation is triggered:

> In determining whether an insurer has a duty to defend, the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend. … In addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury.

Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010). See also Hartford Cas. Ins. Co. v. Gelshenen, 387 F. Supp. 3d 634, 638 (W.D.N.C. 2019) ("The court's analysis of the facts [is] limited to those alleged in the underlying pleading, not any and every version of the facts.").

When construing the provisions of the policy, the object "is to arrive at the insurance coverage intended by the parties when the policy was issued." Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). The intent of the parties can be gleaned from the language in the policy itself. The language in the policy is to be construed as written with any undefined terms to be given a meaning "consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise." Id. An insurer's obligations to its insured are defined by the language in the policy and cannot be enlarged by judicial construction. Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). This is to prevent the imposition of "liability upon the company which it did not assume and for which the policyholder did not pay." Wachovia, 276 N.C. at 354, 172 S.E.2d at 522.

When disputes arise regarding the duty to defend, the burden is on the insured to prove that the lawsuit falls within the policy's coverage. Once the insured meets this burden, the burden shifts to the insurer to show that a policy exclusion applies to preclude coverage. Kubit v.

MAG Mut. Ins. Co., 210 N.C. App. 273, 283, 708 S.E.2d 138, 147 (2011); Gleshenen, 387 F. Supp. 3d at 638–39.

**A. The Insurance Policies Issued by Penn National**

Penn National issued a Garage Policy to Named Insured, Kia of Gastonia, Grassroots Associates Inc. DBA, Policy No. GR9 0703991 03, for the policy period of November 28, 2016, through November 28, 2017 ("Garage Policy"). (EN 1-6). The Garage Policy provided liability coverage pursuant to the garage coverage form (Id., pp. 26-43), certain errors and omissions coverage under an endorsement titled "Extended Garage Coverage – Auto Dealers" (Id., pp. 14–18), and personal injury coverage under an endorsement entitled "Personal Injury Liability Coverage – Garages" (Id., pp. 52–54).

Penn National also issued a commercial umbrella liability policy to Named Insured, Kia of Gastonia Grassroots Associates Inc. DBA, Policy No. UL 90703991, for the same policy period ("Umbrella Policy"). (EN 1-7). This policy provided "bodily injury," "property damage," and "personal and advertising injury" pursuant to the commercial liability umbrella coverage form. (Id., pp.16–39). There was no umbrella coverage provided for any errors and omissions coverage contained in the Garage Policy.

The insuring agreement contained in the liability coverage part of the Garage Policy states:

**1. "Garage Operations" – Other Than Covered "Autos"**

> a. We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos."

(EN 1-6, p.27).[1] For coverage to be afforded under the liability coverage part, the damages sought in the Underlying Lawsuits must fall within the definitions of "bodily injury" or "property damage" caused by an "accident." The Penn National Policies[2] define these terms as follows:

**SECTION VI – DEFINITIONS**

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

O. "Property damage" means damage to or loss of use of tangible property.

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

H. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of the coverage form as covered "autos." "Garage operations" also include all operations necessary or incidental to a garage business. (Id., pp. 41–43).

**B. The Underlying Lawsuits**

In the Underlying Lawsuits, the customer-plaintiffs alleged that Defendant Kia of

---

[1] The liability coverage part of the Garage Policy also contains an insuring agreement for "Garage Operations" – Covered "Autos" (id., p. 28) that is identical to the above-quoted language with the exception that it includes coverage for "garage operations" involving the ownership, maintenance or use of covered "autos," as opposed to excluding such coverage. As the Underlying Lawsuits involve the sale of cars, and not their "ownership, maintenance or use," the first insuring agreement is the appropriate one for analysis. See McLeod v. Nationwide Ins. Co., 115 N.C. App. 283, 292, 444 S.E.2d 487, 493 (1994).

[2] The Umbrella Policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence." (EN 1-7, p. 16). The definitions of the relevant terms are substantially similar. (Id., pp. 35–38). The analysis regarding coverage is therefore the same under both the Garage Policy and the Umbrella Policy.

6

Gastonia engaged in a scheme to sell cars to elderly, disabled, or otherwise unsophisticated buyers who could not afford to purchase the cars. Kia of Gastonia's alleged bad acts include: intentionally misrepresenting information on credit applications to ensure that the customer obtained financing to purchase the vehicles, intentionally increasing the price of the vehicles by including unconsented-to packages, and intentionally misrepresenting that the customer could come back to refinance loans for lower payments when that was not true. (EN 11-1, ¶ 139).

In its Memorandum in Opposition, Defendant asserts that all of the Underlying Lawsuits have settled with the exception of the following two lawsuits: "Peggy Darlene Ensley and Donnie Candler Ensley v. Grassroots Associates, Inc. d/b/a Kia of Gastonia, Integrity Automotive Promotions, LLC, and Citizens Bank, National Association," Civil Action No. 19-CvS-4503 (EN 1-3; 18-1; 18-2; 18-3) ("Ensley Lawsuit"); and "Baxter Lee Hansen v. Grassroots Associates, Inc. d/b/a Kia of Gastonia, and Integrity Automotive Promotions, LLC," Civil Action No. 19-CvS-5080 (EN 1-5; 18-4; 18-5; 18-6) ("Hansen Lawsuit").

The pleadings filed in the Underlying Lawsuits specifically allege the damages sought. In the Ensley Lawsuit, the following damages are alleged:

> 82. Plaintiffs would not have purchased the Rogue if they had known that they did not qualify for the loan at their income level, or if they had known that Kia of Gastonia and/or Giracs had made gross representations on the Rogue's credit applications.
> * * *
> 96. Kia of Gastonia intended for Plaintiffs, unsophisticated buyers, to rely on its representations in order to induce Plaintiffs' purchase of the Rogue.
>
> 97. Plaintiffs did in fact rely on Kia of Gastonia's representations in purchasing the Rogue.
> * * *
> 126. Plaintiffs suffered damages proximately caused by their reliance on Defendants' false representations and concealments. Specifically, Plaintiffs would not have purchased the Rogue had they been told the truth about their finance payments and had their credit applications been rejected as they should have been.
> * * *

7

> 135. Plaintiffs' reliance on Kia of Gastonia's false information proximately caused Plaintiffs to incur financial damage. Specifically, Plaintiffs would not have purchased the Rogue had Kia of Gastonia provided them with accurate information regarding the cost of the Rogue.
>
> * * *
>
> 148. Had Kia of Gastonia provided Plaintiffs with accurate information regarding the purchase price of the Rogue, Plaintiffs would not have purchased the vehicle.

(EN 18-2; See also EN 18-1, ¶¶82, 96-97, 137; 18-3, ¶¶87, 101-02, 131, 140, 153). Similarly, in the Hansen Lawsuit, the following damages are sought:

> 80. Plaintiff would not have purchased the Soul if she had known that she did not qualify for the loan at her income level, or if she had known that Kia of Gastonia and/or Giracs had made gross misrepresentations on the Soul's credit application.
>
> * * *
>
> 89. Plaintiff would not have purchased the Sportage if she had known that she did not qualify for the loan at her income level, or if she had known that Kia of Gastonia and/or Giracs had made gross misrepresentations on the Sportage's credit application.
>
> * * *
>
> 109. Kia of Gastonia intended for Plaintiff, unsophisticated buyer, to rely on its representations in order to induce Plaintiff's purchase of the Soul and the Sportage.
>
> 110. Plaintiff did in fact rely on Kia of Gastonia's representations in purchasing the Soul and the Sportage.
>
> * * *
>
> 139. Plaintiffs suffered damages proximately caused by her reliance on Defendants' false representations and concealments. Specifically, Plaintiff would not have purchased the Soul and the Sportage had she been told the truth about her finance payments and had her credit application been rejected as it should have been. Now, as a result of the purchase of the Soul and the Sportage, Plaintiff has had the Soul repossessed, which has caused Plaintiff to owe a large deficiency and which has caused catastrophic damage to her credit score. Plaintiff was also forced to re-enter the job force in order to make payments on the Sportage.
>
> * * *
>
> 148. Plaintiff's reliance on Kia of Gastonia's false information proximately caused Plaintiff to incur financial damage. Specifically, Plaintiff would not have purchased the Soul or the Sportage had Kia of Gastonia provided her with accurate information regarding the cost of the Soul or the Sportage.
>
> * * *
>
> 161. Had Kia of Gastonia provided Plaintiffs with accurate information regarding the

purchase price of the Soul and Sportage, Plaintiffs would not have purchased the Soul or the Sportage.

(EN 18-5; See also EN18-4, ¶¶ 80, 89, 109-10, 139; EN 18-6, ¶¶ 86, 95, 115-16, 145, 154, 167).

The Underlying Lawsuits do not allege that the customer-plaintiffs suffered any physical injuries. Accordingly, the Underlying Lawsuits do not allege "bodily injury" as that term is defined by the Penn National Policies. See South Carolina Ins. Co. v. White, 82 N.C. App. 122, 124, 345 S.E.2d 414, 415 (1986) (defining "bodily injury" in an insurance policy as referring to "physical pain, illness or any impairment of physical condition"). The Underlying Lawsuits likewise do not allege "property damage." The Penn National Policies define "property damage" as "damage to or loss of use of tangible property." (EN 1-6, p. 43). The customer-plaintiffs are not seeking damages for their tangible property that was physically injured or for the loss of use of any such property. See America Online, Inc. v. St. Paul Mercury Ins. Co., 347 F.3d 89, 94-95 (4th Cir. 2003) (finding that the ordinary meaning of "tangible" in policy definition of "property damage" required that the damage be to something with physical substance).

In addition to the fact that the Underlying Lawsuits do not allege "bodily injury" or "property damage," the damages were not caused by an "accident" as required for coverage under the Penn National Policies. The Supreme Court of North Carolina has defined "accident" as used in insurance policies to mean:

> an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undersigned occurrence; the effect of an unknown cause, or the cause being known, an unprecedented consequence of it; a casualty.

Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 694, 340 S.E.2d 374, 379 (1986); see also Henderson v. United States Fid. & Guar. Co., 124 N.C. App. 103, 111, 476 S.E.2d 459, 464 (1996), aff'd, 346 N.C. 741, 488 S.E.2d 234 (1997) (acts of unfair and

9

deceptive trade practices were so substantially certain to cause injury that they were not an accident under policy); Russ v. Great Am. Ins. Cos., 121 N.C. App. 185, 189, 464 S.E.2d 723, 725 (1995) (because sexual harassment is substantially certain to cause injury, it is not an "accident" under the policy). Here, Kia of Gastonia's alleged actions were both intentional and substantially certain to result in the harm complained of in the Underlying Lawsuits. Therefore, any damages sought in the Underlying Lawsuits were not caused by an "accident."[3]

In its Memorandum in Opposition, Defendant argues that Penn National is required to defend the Underlying Lawsuits under a separate coverage form titled, "Crime Coverage Endorsement." However, the Crime Coverage Endorsement is not contained in either the Garage Policy or the Commercial Umbrella Liability Policy at issue in this case. Instead, the Crime Coverage Endorsement is a commercial property coverage form that is only included in a separate commercial lines policy which only provides first-party property coverage and not third-party liability coverage to Kia of Gastonia. The insuring agreement contained in the Crime Coverage Endorsement does not provide coverage for damages to third parties, but only for losses suffered by Defendant. Because the Underlying Lawsuits do not seek losses suffered by Defendant but only requests damages allegedly suffered by the customer-plaintiffs, the Crime Coverage Endorsement does not provide coverage for these Underlying Lawsuits.

Finally, the Court notes that after Penn National filed this lawsuit, the previously filed

---

[3] Kia of Gastonia has agreed in its Memorandum in Opposition to Penn National's motion for summary judgment that the underlying lawsuits do not seek "bodily injury" or "personal injury." Kia of Gastonia has also admitted that there is no coverage under the errors and omissions coverage contained in the Garage Policy. Additionally, there is no coverage under the TILA Endorsement because the Underlying Lawsuits do not allege a TILA violation, and the exclusion for "dishonest, fraudulent … or intentional" acts clearly applies to preclude any such coverage. Finally, the Underlying Lawsuits do not contain any claims enumerated in the Penn National Policies' definition of "personal injury."

10

Underlying Lawsuits, which only asserted claims of unfair and deceptive trade practices and fraud, were amended to include claims of negligent misrepresentation and negligence. In addition, all subsequently filed Underlying Lawsuits asserted all four claims against Kia of Gastonia: unfair and deceptive trade practices, fraud, negligent misrepresentation, and negligence. Under North Carolina law, an insurer's defense obligation is measured by the facts as alleged in the underlying lawsuit as compared to the language contained in the insurance policies. Harleysville Mut. Ins. Co., 364 N.C. at 6, 692 S.E.2d at 610. "The ultimate focus, then, is on the facts that are pled, not how the claims are characterized." Holz-Her U.S., Inc. v. United States Fid. & Guar. Co., 141 N.C. App. 127, 128, 539 S.E.2d 348, 350 (2000); see also Russell v. Cincinnati Ins. Co., 285 B.R. 877, 885 (M.D.N.C. 2001) ("The problem with this argument is that the North Carolina courts have refused to allow a party's characterization of conduct as "negligence" to trigger insurance coverage when, in reality, the thrust of the allegations is intentional conduct."). Here, the customer-plaintiffs' recasting of the allegations of intentional conduct under the heading of negligence is insufficient to invoke coverage under the Penn National Policies.

In sum, the Court finds that the Penn National Policies only provide coverage for lawsuits that seek damages because of "property damage" caused by an "accident," as those terms are defined by the Policies. They do not provide coverage for economic losses substantially certain to result from Kia of Gastonia's false representations and concealments, and the amendments in the Underlying Lawsuits to include negligence do not change that. Defendant has not proven that the Underlying Lawsuits seek "property damage" caused by an "accident," as those terms are defined in the Penn National Policies. Therefore, there is no coverage for, and no corresponding duty to defend, Defendant in the Underlying Lawsuits.

## IV. CONCLUSION

In sum, for the reasons stated herein, Defendant's summary judgment motion is granted.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**.

2. To this extent, the Court enters the following Order:

The policies of insurance issued by Pennsylvania National Mutual Casualty Insurance Company to Kia of Gastonia do not afford coverage to Kia of Gastonia for the claims and damages which are the subject of the Parks Lawsuit, Welch Lawsuit, Ensley Lawsuit, Bradshaw Lawsuit, and Hansen Lawsuit.

Pennsylvania National Mutual Casualty Insurance Company is not required to defend Kia of Gastonia in the Parks Lawsuit, Welch Lawsuit, Ensley Lawsuit, Bradshaw Lawsuit, and Hansen Lawsuit.

Pennsylvania National Mutual Casualty Insurance Company is not obligated in any way to pay any damages that Kia of Gastonia may become legally obligated to pay as a result of the Parks Lawsuit, Welch Lawsuit, Ensley Lawsuit, Bradshaw Lawsuit, and Hansen Lawsuit.

2. This action is dismissed with prejudice.

3. The Clerk is respectfully instructed to terminate this action.

Signed: September 27, 2021



Max O. Cogburn Jr
United States District Judge